# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WAUKESHA FLORAL & GREENHOUSES, INC.
(d/b/a Waukesha Floral and Waukesha Floral & Greenhouse),

    Plaintiff,

v.

JAMES POSSI,
YOUR FLORIST LLC, and
ANN M. RICE,

    Defendants,

and

ERIE INSURANCE EXCHANGE,

    Intervenor.

Case No. 2:15-CV-01365-NJ

## PLAINTIFF'S BRIEF IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This is a business dispute concerning fair competition and honesty with the public, and it demonstrates why those values are deserving of protection by our courts. The Plaintiff, Waukesha Floral & Greenhouses, Inc. (d/b/a Waukesha Floral and Waukesha Floral & Greenhouse), would rather focus its efforts and money doing what it does best: providing floral services to the southeastern Wisconsin community. Instead, it has been forced to confront the underhanded business practices of James Possi. Although Possi ostensibly does business as "Your Florist LLC," he in fact advertises under hundreds of different business names, the great majority of them using the names of Wisconsin municipalities in which he has no actual physical presence. At one point, he used 1,000 different tradenames over 48 states, each with a different phone number, and which

incorporated the names of towns and cities across the United States. This, in spite of the fact that Possi and his company were always located in Waukesha.

Plaintiff is not here to address every deceptive name used by Possi. Rather, it is before this Court asking it to stop Possi and his company from using the following 12 names: Waukesha Flower And Greenhouse, Waukesha Flower and Greenhouse, Waukesha Flower & Greenhouse, Waukesha Florals, Waukesha Florists, Florist in Waukesha WI, Florist in Waukesha Wisconsin, Waukesha Greenhouse, Greenhouse in Waukesha, Green House in Waukesha, Waukesha Flower, and Waukesha Flowers. These names are clearly an attempt to infringe on Plaintiff's trademarked name "Waukesha Floral," or its long-time tradename of "Waukesha Floral & Greenhouse." Indeed, they are either closely similar to or near-exact replications of the Plaintiff's trademark and tradename.

Accordingly, this Court should make the preliminary injunction permanent as to these names. It should also grant the Plaintiff summary judgment as to liability for the following claims:

- Count I: Trademark Infringement under 15 U.S.C. § 1114
- Count II: Unfair Competition under 15 U.S.C. § 1125(a)
- Count IV: Common Law Trademark Violation
- Count V: Common Law Tradename Violation
- Count VI: Common Law Unfair Competition

Finally, as the evidence set forth below will demonstrate, Possi and Your Florist LLC's conduct has been both intentional, and targeted at harming the Plaintiff's business. Accordingly, this Court should also find as a matter of law that their conduct has been willful.

This case should then move forward to a trial on damages.

# BACKGROUND ON THE PARTIES

**The Plaintiff**

Waukesha Floral & Greenhouses, Inc. is a family-business whose roots run deep in the Waukesha-community. Indeed, it has been operating at the same location at 319 South Prairie Avenue since 1907. (Plaintiff's Proposed Material Facts ("PPMF") ¶1.) The Loppnow family acquired the business in 1978 from Henry and Agnes Schwab, and it is presently run by brothers Thomas and Martin Loppnow, who represent the second generation of Loppnow ownership. (PPMF ¶¶2-3.)

The company is more commonly known as "Waukesha Floral" or "Waukesha Floral & Greenhouse," the names which it has utilized continuously since 1904 and 1980, respectively. (PPMF ¶4.) In 2000, the name "Waukesha Floral" was approved for trademark status with the United States Patent and Trademark office. (PPMF ¶5.) The trademark was renewed in 2010. (PPMF ¶6.)

**Defendant James Possi**

James Possi has been in the floral industry since 1980, when he began selling silk floral arrangements out of his garage in Illinois. (PPMF ¶7.) At the time, Possi did not identify himself as a business. (PPMF ¶8.) Possi eventually moved to Dallas, Texas in the early 1980s and opened a floral shop in a mall. (PPMF ¶9.) After approximately two years in Dallas, he moved to Wichita Falls, Texas and worked out of a garage. (PPMF ¶10.) The business ultimately became known as "Texas Enterprise," and Possi was its sole employee. (PPMF ¶11.)

Possi moved to Wisconsin in 1983 and opened a floral shop in Waukesha at 912 East Moreland Boulevard. (PPMF ¶12.) He operated under the name "Best Florist" or "Best Floral," but did not incorporate the business and did not have any employees. (PPMF ¶13.) After a dispute

with his landlord in the mid-1990s, Possi moved to a new location at 918 East Moreland Boulevard. (PPMF ¶14.)

**Defendants Ann Rice & Your Florist, LLC**

In April 2011, Possi left the 918 East Moreland Boulevard location and moved his business to West Layton Avenue in Milwaukee. (PPMF ¶15.) What apparently triggered the move was that Possi's mother and children did not care for his third wife, Larissa Possi. (PPMF ¶16.) As part of the move, Possi and his wife Larissa organized a new limited liability company called "Your Florist LLC." (PPMF ¶17.)

Starting in 2011, the business at 918 East Moreland Boulevard was run by Possi's daughter, Ann Rice. (PPMF ¶18.) As Possi testified:

> Q: What brought you back to Waukesha?
>
> A: The shop was closed – Milwaukee – Waukesha shop is closed because my daughter did not want to run it anymore.
>
> Q: Your daughter Ann was running the store at 918 East Moreland?
>
> A: Right. Right. It was her shop.
>
> Q: What kind of shop was it?
>
> A: Same flower shop. She – that's the same flower shop I gave it to her She was running it. She was paying her taxes. She was paying for all her telephone bills. It was her shop. Not mine.
>
> Q: What did she call the shop?
>
> A: Probably Best Floral. I don't know what she did. Not my problem. It was her shop.
>
> Q: So you have no idea what the business was called?
>
> A: No. Well, most likely Best Floral. It just ran the same way except – nothing really changed except she was running it with her name, her telephone numbers. She was paying her telephone bills. She was paying for her own taxes. I had nothing to do with it. I am not part of that flower shop in Waukesha. Since April – what is it? 2011 to '15. Four years.

(PPMF ¶19.)

Rice acknowledged that she took no steps to correct any of the advertising that was in place in 2011 when she took over the business: "Whatever was there prior to me coming there is what – it stayed the same . . . ." (PPMF ¶20.)

Possi ultimately returned to the 918 East Moreland Boulevard location on April 1, 2015. (PPMF ¶21.) The principal office for Your Florist is presently 918 East Moreland Boulevard. (PPMF ¶22.)

## HOW THE PARTIES MARKET THEMSELVES

**Plaintiff**

To maintain its presence in the southeastern Wisconsin floral market, Plaintiff invests a great deal in advertising and marketing. Indeed, in the last fifteen years Plaintiff has spent over $1.33 million in advertising. (PPMF ¶23.) Plaintiff's advertising encompasses television commercials, digital billboards, newspaper inserts, website design, search engine optimization, stickers on trucks, Yellow Page listings, and a Facebook page. (PPMF ¶24.) The overarching goals are set forth in the *précis* of Plaintiff's 2016 advertising campaign:

> Our main marketing goals are to continue to increase name awareness, product awareness and sales for Waukesha Floral & Greenhouse. This will be accomplished through strong creative to present our sales message and effective media buying. We will continue to place media in areas where Waukesha Floral will be as exclusive as possible.

(PPMF ¶25.)

As we shall see, Defendants take a markedly different approach.

**Defendants**

Possi's advertising originally consisted of a wooden sign outside of his store building. (PPMF ¶26.) Beginning in 1985 or 1986, he began advertising in the phonebook by using the name of a municipality followed by "florist." (PPMF ¶27.)

Ultimately, Possi took this idea of using a municipal name followed by "florist" across the country, and had phone book listings in every state in the United States with the exception of Alaska and Hawaii. (PPMF ¶28.) To do this, Possi contacted various phone companies and requested a listing of a new tradename in the phone book. (PPMF ¶29.) His goal was to find wealthy suburban communities in different states and then list a new business name associated with that community in a phone book. (PPMF ¶30.) As Possi explained the intent of his strategy:

> Q: And what makes a good tradename?
>
> A: The population has to be local. Population has to be well-to-do. If this is in the – if I had an Inner City Florist, nobody's going to buy flowers or order flowers Inner City Florist. If I wrote – I don't want to start being racist, but let me –
>
> MS. BESSINGER: Mr. Possi, just –
>
> WITNESS: Dumb Black Florist, nobody's going to buy flowers from a Dumb Black Florist. They're going to buy from a community that is – has money. Waukesha is a community that has money. It does not have lots of poor minorities.
>
> Now, if this – if I had this Waukesha – assume Sussex, Waukesha was blacks, all blacks, and Latinos, assume, but they were equally financially endowed, it would be just as great name.
>
> BY MR. FERNHOLZ:
>
> Q: Okay. So the name, the city, is important.
>
> A: Right.

(PPMF ¶31.) At the apex of this business plan, Possi had approximately 1,000 phone numbers listed, each one associated with a different business name. (PPMF ¶32.) Possi acquired a different phone number for each tradename as a form of insurance; in the event he was ordered to disconnect a given number, he would only lose the advertising for the tradename associated with that specific number. (PPMF ¶33.)

This approach was not without its risks. In 2009, Possi registered a phone number for "Perry Hall Florist," named after the unincorporated community in Maryland named "Perry Hall." (PPMF ¶34.) Possi's listing created direct confusion with a half-century old florist named "Sanner's Perry Hall Florist." (Id.) As it turned out, the daughter of a long-time customer of Sanner's was given Possi's number after calling 411 and asking for "Perry Hall Florist." (Id.) When her mother received the flowers, she went to Sanner's to complain about the poor quality. (Id.) Immediately the Sanners called the police, who traced the number from a Verizon building in the Baltimore area which was then forwarding the calls to Possi in Waukesha. (Id.) As Ken Sanner told a reporter, "He had 17 listings for 17 different florists – it was all the same number in Wisconsin." (Id.) As noted in an article about the contretemps:

> Though one of the Sanner's customers spoke up, there may be others who ordered over the phone, didn't get the quality of flowers the expected and decided never to go back to Sanners, even though the Sanners' flower shop had nothing to do with the order.
>
> "We don't know how many people called that guy," Ken Sanner said.
>
> "That guy," is James Possi of Waukesha, Wisc.
>
> But Possi doesn't think he did anything wrong.
>
> "Over-protecting, over-regulating is not good for anybody," Possi said when a reporter called him March 5[, 2009].
>
> When asked why he listed himself as a florist in [the Baltimore] area Possi said, "small businesses like me have to use their imaginations."
>
> "Anybody that asked me if I was located there (in Perry Hall), I would deny it," he said.

(Id.)

Ultimately, the "Perry Hall Florist" listing was removed from the phonebook, but not before Possi's actions prompted legislation in Maryland to require businesses with telephone

listings to accurately state their physical location.  *See* S.B. 10, 424th Sess., (Md. 2009), codified as Md. Code Com. Law §§ 11-701—705.

By 2016, Possi had registered a staggering 285 tradenames in Wisconsin alone, with nearly every tradename using a different Wisconsin municipality. (PPMF ¶35.) Notwithstanding the fact that Possi's sole physical location is in Waukesha, he does business under such names as "Appleton Best Florist" and "Monona Best Florist." (Id.) According to Possi, the goal of doing business under so many names is to be associated with as many communities as possible and to grab the attention of consumers. (PPMF ¶36.) Naturally, his intention is to drive business and generate sales through advertising. (PPMF ¶37.) Significantly, Possi acknowledges that under his shotgun approach in registering tradenames, he never researches whether another florist already does business under a given name. (PPMF ¶38.)

As measured in dollars, Possi believes the telephone books are an extremely valuable tool for targeting customers. As he testified, he would pay upwards of $400 **per month** to register just a **single** phone number. (PPMF ¶39.) And although Possi is now down to seven to 10 phone numbers, he is paying $600-$700 a month for these listings. (PPMF ¶40.)

## **PRIOR HISTORY BETWEEN PLAINTIFF AND POSSI**

In January 2000, Plaintiff sued Possi and the entity "Best Florist" for using the tradenames "Waukesha Florist & Greenhouse" and "Waukesha Florist." (PPMF ¶41.) That August, the parties reached a stipulation and order for dismissal, whereby Possi and Best Florist agreed to restrict their use of tradenames as follows:

> A. Defendant will cease any and all use of the following terms or tradenames: "Waukesha Florist & Greenhouses", Waukesha Florist and Greenhouse", Waukesha Florist", Waukesha Floral and Greenhouses", Waukesha Floral and Greenhouse", and "Waukesha Floral".

    B. Defendant will cease use of the individual words "Waukesha" and "Florist" where those words are contiguous or where they make up the majority of a trade name. The Defendant is, however, specifically authorized to use the term "Possi Florist in Waukesha". Any other use is prohibited. For illustration purposes, the following uses would violate this Stipulation: "Best's Waukesha Floral", "Possi's Waukesha Florist", "Waukesha Florist-Best", "Waukesha Florist-James Possi" and "Waukesha's Best Florist".

(PPMF ¶42.)

In the years following the 2000 lawsuit and settlement, Plaintiff and Possi corresponded intermittently through counsel regarding use of tradenames and compliance with the stipulation. For example, in 2003 the parties went back and forth regarding Possi's use of the names "Waukesha Wisconsin The Best Florist" and "Best Florist in Waukesha Wisconsin." (PPMF ¶43.) And in 2005, counsel for the Plaintiff wrote to Possi's attorney to alert him that it was receiving mailings with "James Possi" listed as the "owner" of Waukesha Floral. (PPMF ¶44.)

In 2015 after Possi returned to his Waukesha location, Plaintiff discovered advertisements in local phone books for the names "Waukesha Flower And Greenhouse," "Waukesha Flower and Greenhouse," "Waukesha Flower & Greenhouse," "Waukesha Florals," "Waukesha Florists," "Florist in Waukesha WI," and "Florist in Waukesha Wisconsin." (PPMF ¶45.) Accordingly, Plaintiff filed suit against Possi and Your Florist in Waukesha County Circuit Court alleging violations of the Lanham Act, common law trademark violations, tradename infringement, unfair competition, deceptive trade practices, and violations of the 2000 stipulation. (Dkt. # 1-1.) Plaintiff also moved for a temporary injunction. (Dkt. # 2.) Possi and Your Florist removed the matter to federal court. (Dkt. # 1.)

## PROCEDURAL HISTORY

On March 8, 2016, this Court granted Plaintiff's motion for a preliminary injunction. (Dkt. # 39.) As part of its order, the Court enjoined Possi and Your Florist from using the names

Waukesha Flower and Greenhouse, Waukesha Flower and Greenhouse, Waukesha Flower & Greenhouse, Waukesha Florals, Waukesha Florists, Florist in Waukesha WI, or Florist in Waukesha Wisconsin. (Dkt. # 39:14.) Defendants were also ordered to "remove the seven names from any future Yellow Book, Yellow Pages, or any similar phone book, or any other form of advertising including but not limited to the internet and social media." (Id.) Possi and Your Florist were also ordered to disconnect each phone number associated with the violative names. (Id.)

After Possi and Your Florist responded to initial discovery requests in 2016, Plaintiff learned that they were also doing business under the names "Waukesha Greenhouse," "Greenhouse in Waukesha," "Green House in Waukesha," "Waukesha Flower," and "Waukesha Flowers." (PPMF ¶46.) Accordingly, Plaintiff moved to amend its pleadings to add these names to its complaint. (Dkt. # 53.) The Court granted the motion and allowed the amended complaint. (Dkt. # 56.)

In September 2016, Plaintiff filed a motion for contempt of the injunction order after learning that "Waukesha Florists" and "Waukesha Florals" were still listed on www.yellowpages.com. (Dkt. # 63 & 64.) Both names were associated with phones numbers that Possi and Your Florist were to disconnect. (Id.) Moreover, the Defendants continued to maintain registrations through the Wisconsin Department of Financial Institutions for five names which the Court had enjoined them from using. (Id.)

In response to the motion, Possi and his counsel actively took steps to remove the listings from both the online and print versions of Yellow Pages and Yellowbook. (PPMF ¶47.) Possi also cancelled the tradename registrations with the Wisconsin Department of Financial Institutions. (PPMF ¶48.) The Court ultimately found that the online phone book listings violated the injunction order, but did not award any sanctions. (Dkt. # 72.)

As this matter was proceeding towards the original discovery and dispositive motion deadlines, Possi and Your Florist tendered the matter to their corporate insurers for a defense, prompting a motion to amend the scheduling order. (Dkt. # 77.) Following a court hearing, Plaintiff amended its complaint a second time to add Ann Rice as a defendant based on her role in taking over the business at 918 East Moreland Boulevard in 2011. (Dkt. # 91.)

Due to motions to intervene, bifurcate, and stay by Defendants' three insurance companies, this case was effectively stayed from November 2016 through October 2017. Following a decision on the insurance coverage motions, the parties concluded lay and expert depositions.

Plaintiff now moves for summary judgment as to liability on the following causes of action:

- Count I: Trademark Infringement under 15 U.S.C. § 1114
- Count II: Unfair Competition under 15 U.S.C. § 1125(a)
- Count IV: Common Law Trademark Violation
- Count V: Common Law Tradename Violation
- Count VI: Common Law Unfair Competition

In addition, Plaintiff moves for a ruling on summary judgment that Possi and Your Florist, LLC's conduct was "willful."

## STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Becker v. Tenenbaum-Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990).

A party suing for trademark infringement may move for summary judgment as to liability while reserving the issue of damages for trial. *See Coach, Inc. v. Diva's House of Style*, No. 3:11-CV-253 JD, 2012 WL 6049722, at *1 (N.D. Ind. Dec. 5, 2012); *Lorillard Tobacco Co. v. Amoco & Food Shop 5, Inc.*, 360 F. Supp. 2d 882, 887 (N.D. Ill. 2005). Although trademark disputes are normally fact-intensive, "granting summary judgment for a trademark owner is not an unprecedented anomaly." *Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*, No. 11 C 02242, 2013 WL 6839815, at *3 (N.D. Ill. Dec. 27, 2013) (collecting Seventh Circuit cases affirming summary judgment in trademark cases). A court may determine that a defendant has violated a plaintiff's trademark when "the evidence is so one-sided that there can be no doubt about how the question should be answered." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008) (citations omitted).

## ARGUMENT

The Lanham Act, codified as 15 U.S.C. §§ 1051-1141n, protects registered trademarks from unfair competition, deception, and fraud "by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks." 15 U.S.C. § 1127. To prevail on a trademark claim under the Lanham Act, the plaintiff must establish that (i) its mark is protectable; and (ii) that defendant's use of the mark is likely to cause confusion among consumers. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). These elements are required for both trademark infringement claims under 15 U.S.C. § 1114 (Plaintiff's first cause of action) and unfair competition claims under 15 U.S.C. § 1125(a) (Count II). *Packman*, 267 F.3d at 638 n.8. The same elements also apply to Plaintiff's common law claims for trademark infringement and unfair competition (Counts IV-VI). *See Foremost Farms USA, Coop. v. Diamond V Mills, Inc.*, No. 16-CV-551-JDP, 2017 WL 1390699, at *3 (W.D. Wis. Apr. 18, 2017) (collecting cases).

I.  **"WAUKESHA FLORAL" AND "WAUKESHA FLORAL & GREENHOUSE" ARE PROTECTABLE NAMES**

On the question of whether "Waukesha Floral" is entitled to protection, once a trademark is registered, it is

> prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's <u>exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration</u> subject to any conditions or limitations stated therein.

15 U.S.C. § 1115(a) (emphasis added). The trademark "Waukesha Floral" is thus "presumed to be valid" barring proof from Defendants of "a legal defense or defect." *Lorillard*, 360 F. Supp. 2d at 886.

Plaintiff also does business as "Waukesha Floral & Greenhouse," and has done so since 1980. (PPMF ¶4.) Under Wisconsin common law, a tradename is entitled to protection when it has acquired "secondary meaning." *D.L. Anderson's Lakeside Leisure Co., Inc. v. Anderson*, 2008 WI 126, ¶51, 314 Wis. 2d 560, 757 N.W.2d 803. Secondary meaning "describes the function of identifying goods or services with a particular or single source. . . . Key to establishing secondary meaning for a trade name is evidence that the relevant target group mentally identifies the trade name as the single source for the product." *Id.*, ¶52 (citations omitted and alterations original). Likewise, under federal law the Lanham Act provides that "[a] mark acquires secondary meaning when it has been used so long and so exclusively by one company in association with its products or services in that particular industry that the word, term, name, symbol, or device has come to mean that those products or services are the company's trademark." *Baig v. Coca-Cola Co.*, 69 F. Supp. 3d 766, 776-77 (N.D. Ill. 2014) (citations omitted), *aff'd*, F. App'x 557 (7th Cir. 2015). Given that Waukesha Floral & Greenhouse has become a Waukesha institution, its tradename has acquired secondary meaning and is entitled to protection under the common law.

## II. THE 12 NAMES USED BY DEFENDANTS ARE LIKELY TO CAUSE CONFUSION

Courts use a seven-factor test to assess whether a challenged mark is likely to confuse consumers: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to "palm off" its product as that of another. *Packman*, 267 F.3d at 643. While no single factor is dispositive, courts have stressed that the first, sixth, and seventh factors are particularly important. *Id.*

Each of these factors will now be applied to the twelve names at issue.

### A. Defendants' Infringing Names are Substantially Similar to "Waukesha Floral" or "Waukesha Floral & Greenhouse"

"Whether there is an infringement of a trade-mark does not depend upon the use of identical words, nor on the question as to whether they are so similar that a person looking at one would be deceived into the belief that it was the other." *Indep. Nail & Packing Co. v. Stronghold Screw Products, Inc.*, 205 F.2d 921, 924 (7th Cir. 1953) (citation omitted). Rather, a person commits trademark infringement if his use of a name is so similar "in form, spelling, or sound" that a consumer is "likely to become confused or misled." *Id.*

Here, the similarity between the names Waukesha Florals, Waukesha Florists, Florist in Waukesha WI, Florist in Waukesha Wisconsin, Waukesha Flower, and Waukesha Flowers to "Waukesha Floral" is readily apparent. Likewise, the other six names at issue in this lawsuit (Waukesha Flower and Greenhouse, Waukesha Flower and Greenhouse, Waukesha Flower & Greenhouse, Waukesha Greenhouse, Greenhouse in Waukesha, and Green House in Waukesha) are remarkably similar to "Waukesha Floral & Greenhouse." The first factor thus falls in Plaintiff's favor.

### B. Plaintiff and Defendants Sell Similar Products in the Same Market

The second and third factors examine the similarity between the products that the plaintiff and defendant offer, and the geographic area where they compete. These factors also support a finding that Defendants are infringing on Plaintiff's trademark and tradename, as the parties compete with one another in the southeastern Wisconsin floral market. (PPMF ¶49.)

### C. Consumers are Likely to Be Confused by the Proximity Between the Names in the Phone Books

The fourth factor looks at the degree of care likely to be exercised by consumers in evaluating the products. Here, the names Waukesha Florals, Waukesha Florists, Waukesha Flower and Greenhouse, Waukesha Flower & Greenhouse, and Waukesha Flower And Greenhouse appear *directly underneath* "Waukesha Floral & Greenhouse" in the phone books. (PPMF ¶50.) It is thus likely consumers looking in the phone book will be confused as to which company is which.

### D. The Trademark "Waukesha Floral" and the Tradename "Waukesha Floral & Greenhouse" are Strong

Trademarks are grouped into five categories, in ascending order of distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. *Platinum Home Mortgage Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 727 (7th Cir. 1998). The more distinctive, the greater protection the trademark is afforded. Once a trademark is registered with the United States Patent and Trademark Office, the law presumes that the mark is at a minimum, "suggestive," or that the mark has acquired "secondary meaning." *See Packman*, 267 F.3d at 638.

As set forth previously, "Waukesha Floral" and "Waukesha Floral & Greenhouse" have acquired secondary meaning in the local floral market by virtue of maintaining the same location and providing substantially the same products and services for over a century. *See Baig*, 69 F. Supp. 3d at 776-77 ("A mark acquires secondary meaning when it has been used so long and so exclusively by one company in association with its products or services in that particular industry

that the word, term, name, symbol, or device has come to mean that those products or services are the company's trademark.") (citations omitted). In short, Plaintiff's trademark and tradename are strong and entitled to protection.

### E. Actual Confusion

The sixth factor for likelihood of confusion looks at whether there is evidence of actual consumer confusion. Here, the record has established several inferences of consumer confusion. For example, a long-time customer service employee of Waukesha Floral has received between 20 to 30 calls asking for "James Possi," as well as numerous phone calls asking for "Waukesha Flower and Greenhouse" and "Waukesha Florists." (PPMF ¶¶51-52.) The two principals of Waukesha Floral, Thomas and Martin Loppnow, both testified to receiving phone calls from confused customers. (PPMF ¶53.) Plaintiff has also received mail addressed to Possi. (PPMF ¶54.) *See Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1090–91 (7th Cir. 1988) (holding that unsolicited mailers sent to the plaintiff and addressed to the defendant "were properly considered by the trial court as evidence of a likelihood of confusion"). Moreover, Possi testified that he received a phone call from an "old lady" asking for Waukesha Floral, and he provided her with the Plaintiff's phone number. (PPMF ¶55.)

It is important to pause here and note that Plaintiff need not demonstrate **actual** consumer confusion to establish **likely** consumer confusion. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) ("[Defendant] next contends that the district court's finding that there was 'no evidence of actual confusion by any customers' precludes any likelihood of confusion. As we have stated many times, however, the plaintiff need not show actual confusion in order to establish *likelihood* of confusion.") (Emphasis original). This is so because "instances of actual confusion may be difficult to discover." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 686 (7th Cir. 2001). Likewise, a plaintiff suing for unfair competition under the common law

of Wisconsin does not need to show actual customer confusion because such evidence is "practically almost impossible to secure." *First Wis. Nat'l Bank of Milwaukee v. Wichman*, 85 Wis. 2d 54, 67, 270 N.W.2d 168, 175 (1978) (citation omitted). As such, "the most that the absence of evidence of actual confusion can be said to indicate is that the record does not contain any evidence of actual confusion **known** to the parties." *CAE*, 267 F.3d at 686 (emphasis added).

In short, while Plaintiff does not need to demonstrate actual confusion to meet the full seven-part test for likelihood of confusion, the inferences do support customer confusion.

### F. Defendants are Attempting to "Palm Off" Their Product as the Plaintiff's

The final factor examines whether the Defendants have attempted to "palm off" their product as the Plaintiff's. Once again, this factor weighs in favor of the Plaintiff.

To begin with, the parties have a history with one another. In 2000, Defendant Possi was sued for using the names "Waukesha Florist & Greenhouse" and "Waukesha Florist." (PPMF ¶41.) As part of the settlement, Possi agreed to "cease use of the individual words 'Waukesha' and 'Florist' where those words are contiguous or where they make up the majority of a trade name." (PPMF ¶42.) Possi's past history confirms Defendants' intentions to siphon business away from Plaintiff through trademark infringement.

In the years following the 2000 lawsuit and settlement, the Plaintiff and Possi corresponded intermittently through counsel regarding use of tradenames and compliance with the stipulation. For example, in 2003 the parties went back and forth regarding Possi's use of the names "Waukesha Wisconsin The Best Florist" and "Best Florist in Waukesha Wisconsin." (PPMF ¶43.) And in 2005, counsel for Plaintiff wrote to Possi's attorney to alert him that it was receiving mailings with "James Possi" listed as the "owner" of Waukesha Floral. (PPMF ¶44.)

Given that the Plaintiff repeatedly warned Possi not to infringe on its business names, it is all the more remarkable that in 2015 the names Waukesha Florals, Waukesha Florists, Waukesha

Flower and Greenhouse, Waukesha Flower & Greenhouse, and Waukesha Flower And Greenhouse appeared *directly underneath* the Plaintiff in the phone books. (PPMF ¶50.) It is factually undisputed that Possi and Your Florist intended to advertise under these names in local phone books. In a sworn declaration, Possi stated that Your Florist, LLC does business under these names. (PPMF ¶56.) Moreover, at his deposition Possi testified that he intentionally registered phone numbers with these names: "I put the names into the telephone company. It cost me money. And the fact that I continued to use [the names] cost me more money." (PPMF ¶57.) He also testified that he paid to put these specific names in the telephone book. (Id.)

Further, Possi at one point registered 285 tradenames with the Wisconsin Department of Financial Institutions. (PPMF ¶35.) Although he used in excess of 200 municipalities in his tradenames, the **only** time he references a greenhouse is for "Waukesha Flower and Greenhouse," "Greenhouse in Waukesha," and "Green House in Waukesha," an obvious ploy to be associated with the Plaintiff's name. (Id.) In fact, Possi's application for a greenhouse permit with the City of Waukesha was denied.[1] (PPMF ¶58.)

These facts establish Defendants' intent to "palm off" various tradenames as being affiliated with the Plaintiff's business.

### III. POSSI AND YOUR FLORIST HAVE ACTED WILLFULLY

The Lanham Act permits for an award of treble damages when the defendant acted "willfully." *See* 15 U.S.C. § 1117(a). Similarly, a court may award attorney's fees when the defendant's conduct is determined to be "malicious, fraudulent, deliberate, **or** willful." *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1158 (7th Cir. 1994) (emphasis added). While intent

---

[1] Possi claims he was able to do an end run around the City of Waukesha's determination by "pok[ing] holes in the ceiling" of his building. (PPMF ¶58.)

is normally a fact question, a trial court may determine at summary judgment that the defendant's conduct constituted willful trademark infringement. *See, e.g.*, *Microsoft Corp. v. Ram Distribution, LLC*, 625 F. Supp. 2d 674, 684 (E.D. Wis. 2008).

"A defendant commits willful trademark infringement when the defendant acted with 'willful blindness' to the trademark holder's rights." *Id.* (quoting *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.,* 955 F.2d 1143, 1149 (7th Cir. 1992)). Willful blindness occurs when a defendant suspects wrongdoing and deliberately fails to investigate. *Ram Distribution, LLC*, 625 F. Supp. 2d at 684. A showing that the defendant has been put on notice as to the plaintiff's trademark is "perhaps the most persuasive evidence of willfulness." *Id.* (citations omitted).

As set forth previously, Defendant Possi's intent in this matter cannot be in doubt. In a sworn declaration, he stated that he does business under the names Waukesha Flower and Greenhouse, Waukesha Flower & Greenhouse, Waukesha Florals, Waukesha Florists, Florist in Waukesha WI, and Florist in Waukesha Wisconsin. (PPMF ¶56.) Moreover, at his deposition Possi testified that he intentionally registered phone numbers with these names: "I put the names into the telephone company. It cost me money. And the fact that I continued to use [the names] cost me more money." (PPMF ¶57.) He also testified that he paid to put these specific names in the telephone books. (Id.) Further, there can be no doubt that Possi is capable of removing names from a phone book. In response to a contempt motion, he took steps to remove names in both the online and print versions of the Yellow Pages and Yellowbook, which the Court had ordered him to stop using. (PPMF ¶47.)

For these reasons, the Court should hold that Defendants Possi and Your Florist acted willfully as a matter of law.

## CONCLUSION

Plaintiff asks this Court to grant it summary judgment as to liability on its first, second, fourth, fifth, and sixth causes of action. The appropriate remedy is to grant a permanent injunction against Defendants' use of the following names: Waukesha Flower And Greenhouse, Waukesha Flower and Greenhouse, Waukesha Flower & Greenhouse, Waukesha Florals, Waukesha Florists, Florist in Waukesha WI, Florist in Waukesha Wisconsin, Waukesha Greenhouse, Greenhouse in Waukesha, Green House in Waukesha, Waukesha Flower, and Waukesha Flowers. In addition, Defendants should be precluded from using any future name that is substantially similar to "Waukesha Floral" or "Waukesha Floral & Greenhouse."

The Court should also enter an order that Defendants Possi and Your Florist acted willfully as a matter of law.

Dated this 27th day of February, 2018.

**Cramer, Multhauf & Hammes, LLP**
Attorneys for Plaintiff

BY: *s/ Matthew M. Fernholz*
Matthew M. Fernholz
(SBN:1065765)
Peter J. Plaushines
(SBN: 1004302)
1601 East Racine Avenue • Suite 200
Waukesha, WI 53186
262-542-4278
Fax 262-542-4270
mmf@cmhlaw.com
pjp@cmhlaw.com